May it please the Court, Mark Drozdowski from the Office of the Federal Public Defender for Petitioner Appellant Thomas Rodriguez Infante. In this habeas case, a judge removed a Filipino juror over the objection of a Filipino criminal defendant because he did not want any allegiance to one party over the other based upon racial identification. Our main claim is that if Batson v. Kentucky prevents parties from striking prospective jurors on the assumption that they will favor members of their own race, it also prevents judges from removing seated jurors based on the same assumption. The magistrate judge, district court, and the state in its brief in opposition to Infante's CERC petition all agreed with this principle. I would like- Infante's CERC petition? He filed a CERC petition on direct appeal. I see. And in response, the state said there's no dispute over the legal principles and that if a judge removed a juror based on an assumption- Well, it's the assumption part that's the problem here because here the- let's start with a hypothetical. If this person had come to the jury, to the judge, and said, you know, the defendant's Filipino, I'm Filipino, there's no way I could convict the guy. And the judge did the same questioning and he said, well, there's just no way I can convict the guy. At that point, couldn't you remove him? Correct. That's not what this juror said. He said, he resembles my uncle. And then after nine questions by the judge, he says, I know that I'm Filipino, he's Filipino. It has nothing to do with that. I think the- I read the transcript as the juror volunteering for really no good reason. The jury had already been picked. The case was about to start. Raising with the judge some concerns that the juror had with his own ability to be impartial. I think that's a fair reading of what the juror was trying to do. And if you read it that way, then the judge is colloquy with the juror to try to test, you know, hey, okay, you've sort of raised this concern. It's of concern to me because you're suggesting that based on your racial identification with the defendant, you can't be impartial. As you've just conceded, that would not be okay. That would be a valid grounds for dismissing the juror. So the judge goes through the colloquy, and I read the judge as just, at the end of the day, not being convinced by the juror's ultimate statement that, no, no, no, I can put it all aside. And so it seems to me you're just asking us to determine that the trial judge clearly erred, I guess, in making a credibility determination as to whether this juror was sincere in saying ultimately at the end, no, no, no, I can put all that aside and be fair. No, I think the judge here misrepresented what the juror said and made a leap to there being a problem with a shared racial identification because the juror says it has nothing to do with that. You're taking that out of context, though. The full context of the juror's statement, the whole reason the juror came forward to talk to the judge, out of the blue, unprompted, unsolicited, was to raise concerns with his own ability to be fair and impartial. Again, you can, I guess, dispute that that's the right reading of the record, but I understand why the judge then felt compelled to sort of inquire, okay, sir, you've raised this, I'm not sure why we're hearing about this now for the first time after jury selection is over. But the judge then engaged in a colloquy and ultimately came away not convinced that this juror, in fact, could put aside his racial identification with the juror. And it just seems to me your whole, I don't disagree in any way with the legal premise that you want us to accept, but just as a factual matter, it seems to me what happened here is totally different from the characterization you've tried to offer. No, but the, doesn't it matter that the juror says it doesn't have nothing to do with that when he says I'm Filipino, he's Filipino, it has nothing to do with that. It just reflects me that he looks like my uncle. And the judge leaps on that and makes, to run to the assumption that there's going to be a problem based on the shared racial identity. Why was the juror coming forward to begin with? Well. Your view. In my view, I think I would agree that this is a juror who earlier had said there was, he had some caretaker duties and maybe he thought maybe that was a way to get out of the case. I think the defense lawyer said that, that that's not, this isn't really what he's getting at here. This isn't the real, the real issue. And I think it could be that, but you know, we, we look at, I'm saying, I just, let me jump in. I'm saying why, in your view, other than expressing concerns about his ability to be fair and impartial, why did the juror approach the judge and say, judge, I need to speak to you about something? What, what's the motivation other than I think I might have an issue and here it is? And then the judge started exploring it. You're saying, no, no, no, that's not what was going on. What was going on? He says the issue when he first talks to the judge is he looks like my uncle. And the judge says you can put that out of your mind. How is he hadn't said the part about the Filipino? He just said he looks like my uncle and he kept saying it and he was really concerned. Could the judge have dismissed him for cause then? Well, I think, you know, there, there can be a racial component, right? With that, he looks like my uncle in part because we're on the, on the same race. I think that would be, if, if a judge concluded that, yeah, he looks like, the juror's saying he looks like my uncle and that's why he can't be fair. But the judge here expressly disavows that. He says, I am dismissing him regardless of whether he looks like his uncle. My concern is the shared racial identity. I'm somewhat sympathetic with your effort to, to focus a trial judge on one reason. But if we look back to the last reasoned decision by the California courts, which we're required to do, you got a court of appeals opinion that has all sorts of reasons that a trial judge might exclude someone in the same record. And how do you get around that? Well, because the judge here made it very clear he was striking the juror for one reason and one reason only, and that is his assumption. So we, we would then ignore the other reasons that, looking at the record, that the, the California Court of Appeals cited as reasons that it wasn't a constitutional error? Well, we've made a, a strong argument in our brief that this claim was not adjudicated on the merits by the California Court of Appeal. It ignored the Batson argument. I mean, some might disagree with that, so that you can answer my question. Maybe we decide you're right, but it seems, at least at this point, I'm trying to give deference to the California Court of Appeals, which lists a number of things about the trial record that a judge could, could use their discretion and then properly make a exclusion in a mixed record circumstance, where part of it seems to be racial and part of it seems to be something else. Well, the Court of Appeal, still its primary reason for denial is focusing on what the trial judge said about the shared racial identity. So I'm not sure the Court of Appeal opinion really adds anything to the analysis. Well, it adds a lot of things like they're talking about that aren't necessarily racial that, that would be reasons to grant the to, to exclude the juror. Well, if the court, if the court agrees that Batson is the proper way to look at this case, I know one thing the state has argued in the Court of Appeal says is, it's meaningful that the prosecutor noted that the juror was tearing up and all that. And what Batson cases tell us, and Miller L in particular, is it's the striking party's statement is what matters, and the judge didn't rely on that. He relied on one thing. I, I don't really see how Patson is, is the relevant, I mean, question here. I mean, it's a, it's a completely different question. The problem you have in Batson is that you have preemptory strikes and, which are ordinarily free-for-alls, and you're trying to figure out. I'm not, I'm not here, and we're going to back off certain. First of all, if you're really going to go a Batson route, you've got, you've got problems about clearly established Supreme Court law as to, you know, whether Filipino is even a relevant category. I mean, I, I don't think you even want to be in the Batson realm. I don't see how it's helpful here. It's about something else. Well, we, we don't have a clearly established federal law problem because we get to know where we're going to be because it wasn't adjudicated in the merits. But even, even if we do. I'm sorry, it wasn't adjudicated in the merits because it said that it was deciding constitutional issues, but it really wasn't. No, there was one pleading reference that said, and there's no constitutional violation, but you. Right, and, and there was a constitutional issue raised, and it said that there, that, and it said there was no constitutional violation. And it discussed similar, I mean, the, the discussion was equally applicable, really. So, how can we say that there wasn't a decision on the merits? Well, there was state law constitutional claim raised, too. There's no mention of Batson, any federal cases, the federal equal protection clause. Because Batson doesn't seem, I mean, if I'm saying that I don't think Batson's relevant, then maybe they didn't think Batson was relevant either. But they said there was no constitutional violation. Well, the Supreme Court did because it ordered briefing on the cert petition in the non-capital case, which is very rare. Okay. And the Attorney General responded and said they agree that Batson applies to a strike of a seated juror by a trial judge. Well, I don't know what that means. The underlying notion that you can't have a racial category, yes, applies. That's true. And that's where we began from. But, but that cuts both ways in this case. Because if this person had been quite clear about, if he, to me, if he hadn't backed off at all, then I think there'd be no question that you could remove him. But to me, the hard question is one that nobody's briefed. Which is, because he was ultimately asked, do you understand, as in the, in the death qualified jury cases, for example. He was, was he resurrected by, because he was asked several times whether you can actually do this despite the fact that he's Filipino and he said yes. That, to me, is the question. Did the judge then have to accept that, or how, how much leeway does the judge have at that point? And nobody, because you took, argued this case out here, you never really dealt with the actual set of facts before us. Well, I, excerpts of record, page 68, the judge asked, can you separate those issues out from this case and not allow it to affect your decision, juror number eight. Yes, I will. Okay, and I'm asking, what is the, what set of criteria, and really to what Judge Watford was saying, how much leeway do we give the judge under these circumstances to make a credibility finding? Nobody's discussed that question at all. I would like to, I realize I'm over time, I would just like to say one thing. If the court concludes that this court's Haney decision precludes relief, I would just ask that we be, that the court address our motions for leave to amend and for stay advance and find that the district court abused its discretion in denying those motions and remand so that we could raise the claim of ineffective assistance of counsel. Okay, thank you very much. I see I'm over time. Good morning, your honors. Deputy Attorney General Herb Taddeff on behalf of the respondent and may it please the court. The record shows that there was no racial bias by the trial court in this case. And if there had been, you would concede that that, the Constitution doesn't permit a judge to do what a prosecutor can't, right? Absolutely. Okay, so that, I guess I just didn't even understand why you were sort of trying to make the same assertions made in the SIRTOP. Well, our point was only that to the extent petitioner has raised this as a Batson claim, he's always raised it as a Batson claim. Batson itself is not clearly established law that applies to a trial court's dismissal of a juror for cause. He's raising an equal protection. I understand that. The judges can't sit there and say, boy, you have the same racial background as that person. You're out with no prompting, you know, no justification whatsoever. Just on the assumption that you're going to be too sympathetic to the defendant. You're conceding that, of course, the judge can't do that. Absolutely, that would be improper. So that just takes all the legal stuff out of the way. And then we focus on the facts of this case, right? And I think that's perfectly fine to do. And I think the facts in this case are very clear that there wasn't any racial animus by the trial court in this case. Looking at how- Well, he doesn't have to have racial animus. He has, I mean, again, to me, the question is, the hard question is this. This person raised this problem. The judge was troubled by it. He said to him, well, you know, you really, you can't do that. Are you going to be able to ignore this or exactly whatever he said? And he said a couple times, yes, I can do that. All right, this is the kind of thing that comes up in death-qualified jury issues a lot. My understanding is that we're pretty tough on that, i.e., once the juror says he can do it, how much leeway does the judge have to say, well, I just don't believe him? Well, I think every case is different. But I think we have to allow trial courts to assess the credibility and demeanor and state of mind of a juror. But there are dangers here, right? I mean, the danger being that somebody is- I mean, the judge, I think we can all accept that this judge here was just trying to do his job. He was not trying to get a Filipino guy off the jury. But he got a Filipino guy off the jury. And if- but the question is- so we have to be very careful about the fact of making a racial distinction, whether you're doing it out of good motives or bad. And then- so to me, the question is how much do we have to allow this resurrection the way we do allow it in the death-qualified jury context most of the time? Don't we most of the time say as long as the judge- the juror says he can- despite his own views about the death penalty, he can do this fairly? I think the trial court- we have to look at what happened in the entirety of the one year. And the trial court has discretion because a lot of times a juror might be resurrected. Complete discretion? Well, I think there's an abusive discretion standard. So there has to be- a lot of times a juror, an attorney, especially a good attorney, a clever attorney, will get a juror to ultimately back off something, say, said initially. And that's where the context has to come in. And I think in this case, it's particularly important to note with the context of when the juror actually brought up the issue of race. The trial court asked him, are you telling me that if the prosecution proves its case beyond a reasonable doubt and the jurors are required to return a guilty verdict, that you won't be able to do that? And the juror's response says, it's hard for me. I'm Filipino. I know he's Filipino. But that has nothing to do with it. But he still brought up that issue of race. And it's for the trial court to say, well, his immediate response was race. Now, he can try and back off of that. But that was his immediate response to, are you going to be able to return a guilty verdict if the evidence proves it? And the trial court repeatedly said, I'm concerned about this juror's representations about race. That's what affected him. And I think we have to allow trial courts to have that kind of discretion to assess the juror's statements and state of mind. And in this case, as has been noted, this juror was teary-eyed and was shaking. And the trial court said, this is a troubled person. So these are all factors that allow a trial court to make that decision. And for an equal protection violation, we have to show that there was some sort of racial discrimination. This was just a sort of a routine evaluation of the juror's impartiality that trial courts make every day. And I think we have to allow trial courts to make those sort of assessments. The trial court, in this case, said, I want to make sure that folks- I mean, the only case that I found that is even vaguely similar to this is the Mitchell case. Yes, I think it's very similar. In that case, there was a juror who said, I can't sit in judgment of a fellow Native American- But he never said, on further questioning, yes, I could. But again, that's where I think we- if you have contradictory statements, I don't think you can automatically wait for some magic words. And if a juror ultimately says, okay, I can, I don't think that's the end of the story. I think it's very important when there are contradictory statements and there's a development of a juror's state of mind through Vahir that we allow the trial court to assess that juror's state of mind. And the fact that, again, that a juror simply ultimately says, especially under pressure from an attorney or the judge saying, you know, you can't let that affect you, you can't let that affect you, jurors will try and please the attorney or the court and say, okay, I won't. But I think it's the original statements. The fact that he brought up the issue of the race, that he was teary-eyed, that he repeatedly said, it's going to be hard for me, it'll be hard for me at the bottom of the line. Those were all those initial statements. And I think a trial court is entitled to look at those initial statements as really being the essence of what that juror's concerned about, as apart from statements that are ultimately made after lots of questioning  You made a huge fuss in your brief about this Haney issue. You seem to be off it. Can we assume that it's off the table? Well, if this is, the reason that Haney was brought up was because Petitioner has always raised this as a Batson claim. I mean, it's a word. I mean, it's a Batson claim in the sense that it's about racial qualification of a jury. It's not a Batson claim in the sense that it's not about the prosecutor and it's not about preemptory strikes. So it is and it isn't a Batson claim. I mean, it has a similarity to Batson, but it has some dissimilarities which seem to be key to the Haney problem. I think it's very simple that this case can be resolved on the issue that the California Court of Appeal reasonably could have determined that this trial court did not dismiss this juror for any improper racial reasons. Can you address, though, I guess I'm inclined to disagree with you that the California Court of Appeal actually did render a ruling on the merits on this claim because if I remember what happened is that your opponent raised both kind of the, was it like a state law statutory argument or something like that? And then a separate section addressing Batson-Wheeler. Then you all, for some odd reason in your opposition brief, just ignored the Batson-Wheeler argument altogether, only argued against the state statutory thing. And then we get this California Court of Appeal decision that only analyzes the state statutory thing and then has the one line that Judge Berzon mentioned, which I did not read as speaking at all to the federal constitutional claim that is now before us. So maybe you can help me understand why you think that we should read into the California Court of Appeal's cryptic statement that they actually were fully contemplating the merits of the so-called Batson or equal protection argument. Well, the Court of Appeal said that there was no constitutional violation. And this court has said that under the AEDPA deference standard, a court doesn't have to supply any reasoning. We don't know what the reasoning was for the Court of Appeal. But the question is whether they rejected the claim on the merits. And the fact that they said there's no constitutional violation encompasses equal protection, encompasses... The federal constitutional question was argued to them. I'm sorry? The federal constitutional question was argued to them. Yes, it was. It was presented... In their substantive discussion, they only discussed a statute. They didn't discuss either state or federal constitutional, anything. They said there was no constitutional violation. I know they said, but the discussion was all around the statute. That's correct. But that's correct. But it's not uncommon. In fact, in Johnson v. Williams, the Supreme Court said even when there's no discussion of the federal constitutional claim, there's a presumption that the state court rejected, even if they didn't discuss it. Why isn't the fair assumption to make here that just as the State did, the Court of Appeal just completely overlooked the entirely separate federal constitutional challenge that was being raised? Well, I think one of the reasons might be was because it was raised as Batson, and as we sort of discussed, Batson itself is a preemptory challenge case. It's possible that the Court of Appeal determined it's not even worth our discussion. This isn't a preemptory challenge case. This is a forecaused dismissal. So to the extent petitioners said Batson violation, the Court of Appeal might have said, unnecessary to discuss this. We're going to say there's no constitutional violation. I'm speculating. I don't know why. But really, the only question for 2254D is whether they rejected it on the merits. And I think the simple fact that they said there was no constitutional violation, even without any discussion, is enough to show that the Court of Appeal dealt with the issue on the merits. Okay. I see you're out of time. Thank you very much. Thank you very much. Give you one minute. A word about Mitchell. There you had a juror who said he could not be impartial because of the shared ethnicity or race with a Navajo defendant and their shared religion. And he said he could not sit in judgment of that defendant. And basically, he could not be capitally qualified. He could not agree with that. That is a lot more, much more than what we have here. We have nothing like that. There's another case that the district court mentioned in denying relief, Merced versus McGrath. And I think that was used to say, here's a juror who came up and took the initiative and brought up the issue. Well, there the juror says in the juror questionnaire that he believes in jury nullification. Again, that's not what we have here. We have a colloquy. We're nine questions into it. The juror says this statement about, I'm Filipino. I know he's Filipino. It has nothing to do with that. And I think this juror was rehabilitated and should have sat on this jury. I see I'm out of time unless there's any further questions. Thank you very much. Thank you both for your arguments. Another very interesting case and useful arguments. So Infante versus Martel is submitted. And we will take a break. Thank you.
judges: Berzon, Watford, Whaley